# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daryl J. B.,[1] <br>     Plaintiff, <br>   v. <br> Andrew Saul, Commissioner of Social Security, <br>     Defendant. | Case No. EDCV 19-00255-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.  INTRODUCTION

Plaintiff Daryl J. B. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.  PROCEEDINGS BELOW

On August 11, 2016, Plaintiff applied for DIB alleging disability beginning December 24, 2015. (Administrative Record ("AR") 97-98, 115-117.) The Social

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Security Administration denied the application on March 21, 2017. (AR 115.) Plaintiff also protectively applied for supplemental security income on May 25, 2017. (AR 155.) This application was also denied. (AR 155.) Both the DIB and SSI applications were denied upon reconsideration on July 6, 2017. (AR 114, 133, 152, 155.) Plaintiff filed a written request for a hearing, and a hearing was held on May 21, 2018. (AR 50, 156.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 55-86.) Plaintiff's mother also testified at the hearing. (AR 86-95.)

On July 10, 2018, the ALJ found Plaintiff not disabled pursuant to the Social Security Act, from the alleged onset date through the date of decision. (AR 32.) The Appeals Council denied Plaintiff's initial request for review on August 29, 2018. (AR 15-17.) The Appeals Council set aside this denial after Plaintiff submitted additional information, but again denied Plaintiff's request for review. (AR 8-10.) Plaintiff filed this action on February 8, 2019. (Dkt. No. 1.)

The ALJ followed the familiar five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2015, the alleged onset date ("AOD"). (AR 31.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: uncontrolled diabetes mellitus with kidney complications and peripheral neuropathy; arthropathy of cervical spine; degenerative disc disease of lumbar spine; history of metastatic neoplastic disease with testicular cancer metastatic to lymph nodes; carpal tunnel, right hand; and obesity. (AR 31.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 32.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work . . . except [Plaintiff] can lift, carry, push and pull up to 10 pounds occasionally, less than 10 pounds frequently; sit up to six hours in an eight hour workday; stand and/or walk up to two hours in an eight hour workday; frequently push and pull with bilateral upper and lower extremities; occasionally climb ramps and stairs; no climbing ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally walk on uneven terrain; frequently reach with bilateral upper extremities; frequently handle and finger with bilateral hands; and occasionally operate foot controls with bilateral lower extremities. [Plaintiff] needs to avoid even moderate exposure to hazards (i.e. walking on uneven terrain, working with heights).

(AR 32-33.)

At **step four**, the ALJ found that Plaintiff was unable to perform past relevant work as a radio station program director. (AR 37-38.) At **step five**, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and thus determined that Plaintiff has not been under a disability from the AOD through the date of decision. (AR 38-39.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's RFC; and (2) whether the ALJ properly considered Plaintiff's subjective statements, along with his mother's, in assessing Plaintiff's RFC. (*See* Joint Submission ("JS") 4.) For the reasons below, the Court affirms.

### A. The ALJ's Credibility Determination Is Supported By Substantial Evidence[2]

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting his subjective testimony. (*See* JS 12-15.) The Commissioner disagrees. (*See* JS 15-18.)

///

///

///

---

[2] The Court addresses this issue first because Plaintiff relies heavily on his subjective symptoms with respect to the severity of his impairments. Subjective symptom testimony is also one factor that the ALJ must consider when assessing a claimant's RFC.

4

1. **Plaintiff's Subjective Allegations**

     a. *Plaintiff's Testimony*

At the administrative hearing, Plaintiff testified that he completed up to the eleventh grade. (AR 56.) He stated that he drives a car, but his driving has been limited in the six months prior to the hearing. (AR 57.) Plaintiff last worked as a nighttime radio DJ, but had to stop working because he couldn't concentrate and his carpal tunnel and trigger finger prevented him from pushing buttons. (AR 57-59.) He stated that he was taking Norco daily when he was working. (AR 58.) After 17 years, he and his employer decided "it was too much," and he left his job. (AR 58.) When he first left work, he initially looked around for employment but then became progressively sicker and has not looked for any other type of work. (AR 58.)

Plaintiff received a three-month severance package after leaving his job. (AR 61.) Plaintiff then applied for, and received unemployment benefits for five or six months. (AR 61-63.) As part of his receipt of unemployment benefits, Plaintiff certified every two weeks that he was looking for work. (AR 62-63.)

Plaintiff testified he sometimes uses a walker, but has not been prescribed one. (AR 63-64.) He explained that his congenital lymphedema causes his feet to bloat, which is why he uses the walker. (AR 64.) When asked by the ALJ how often he uses the walker, Plaintiff responded that he uses his wheelchair more. (AR 64.) He stated that he can't bend one hand and has trigger finger release, which makes it difficult to use the walker. (AR 65.)

When asked what prevents him from working, Plaintiff answered that his congenital lymphedema, "being bloated all of the time," was the first problem. (AR 67.) The condition causes his feet to hurt and limits his walking. (AR 68.) His neuropathy was the "next big" problem preventing him from working. (AR 68.) He described the neuropathy as worsening when he had testicular cancer and went through chemotherapy in 2007. (AR 68.)

///

Plaintiff also testified about a surgery on his left hand for trigger finger. (AR 69.) Plaintiff said that the surgery was not entirely successful, so he did not have the surgery on his right hand and then later lost his medical benefits when he stopped working. (AR 69.) While his trigger finger is better, he still suffers from carpal tunnel and arthritis. (AR 69.) Plaintiff testified that his hand problems prevent him from writing for a "good period of time," he "can't type too much," and cannot lift anything "heavy." (AR 71.) When asked what is "heavy," Plaintiff responded, "two bags of groceries," or seven or eight pounds. (AR 71.)

With respect to his feet, Plaintiff stated that he gets "diabetic toe," which can cause pain lasting for weeks. (AR 72.) Additionally, the neuropathy, edema, and lymphedema are the worst on his feet. (AR 72.) As a result, Plaintiff testified that sometimes when he walks to the mailbox, 100 feet away, his feet hurt, but other times he can walk around the mall for about two minutes before feeling sore and having to sit down. (AR 73.)

Plaintiff described having to go to the emergency room in the prior two to three years due to his back and neck problems related to spasms. (AR 74.) He stated that he has been prescribed "the usual painkillers and muscle relaxants" for his neck pain, which he experiences "all the time." (AR 74.) A recent MRI showed a pinched nerve on Plaintiff's left side. (AR 75.)

When asked by his attorney to describe what a bad day looks like for him, Plaintiff testified that he can't sleep, he can't wake up, his head hurts, his neck and jaw and feet and hands hurt. (AR 79.) He takes an anti-inflammatory, meloxicam, as well as Norco. (AR 79.) Plaintiff also testified about problems that are caused by his diabetes. (AR 80.) While he had been able to work and manage his diabetes for 25 years, "it started to all catch up with [him]" and became hard to manage the pain and work while under the influence of two Norcos. (AR 81.)

///

///

b. *Plaintiff's Mother's Testimony*

Plaintiff's mother, Julie Anna B., also testified on Plaintiff's behalf at the administrative hearing. (*See generally* AR 86-95.) Julie stated that her son lives with her. (AR 86.) She helps him with testing his blood sugar, which "gets low a lot," causing Plaintiff to get "a little disoriented." (AR 87.) She testified that Plaintiff's feet are swollen all of the time, his legs and neck hurt, and he constantly feels unwell. (AR 91.) Julie described that Plaintiff's symptoms worsened after April 2018. (AR 93.)

## 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

## 3. Discussion

The ALJ began by reciting the relevant and familiar two-step analysis that an ALJ undertakes in assessing a claimant's testimony regarding subjective pain or the intensity of symptoms: (1) the ALJ must determine whether there is an underlying impairment that could reasonably be expected to produce the pain or other symptoms

alleged; and (2) if so, the ALJ must "evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] functioning." (AR 33.) *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (in assessing the credibility of a claimant's symptom testimony, "[f]irst, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; if so, and if the ALJ does not find evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of the claimant's symptoms").

After reciting the two-step analysis, the ALJ summarized Plaintiff's subjective complaints. (AR 33.) The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of claimant's symptoms . . . are inconsistent with the objective medical evidence and the other evidence of record." (AR 33.)

The ALJ then proceeded to identify certain of Plaintiff's complaints that were inconsistent with the medical evidence. For example, Plaintiff's contention "that he had difficulty with ambulation and struggled walking for extended periods," was inconsistent with the observations of examining medical resources who reported that Plaintiff "ambulated without assistance on May 2016" and that Plaintiff "was able to walk without difficulty at his internal medicine consultative exam on April 2018 without an assistive device." *See* AR 33-34. An ALJ is permitted to rely on "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms." *Tommasetti v. Astrue*, 533 F.3d 1035, 10039 (9th Cir. 2008) (citation omitted); *see also Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming ALJ's credibility determination based, in part, on inconsistencies between claimant's testimony about COPD symptoms and her statements to doctors

that her COPD was "fine" and she became wheezy only when engaging in heavy exertion."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (affirming credibility determination based, in part, on comparisons between claimant's testimony and her prior answers to physicians). While "a single discrepancy fails to justify the wholesale dismissal of a claimant's testimony," *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017), here the ALJ cited to several inconsistencies between Plaintiff's testimony and the observations of doctors regarding his ambulation. AR 33-34.

In addition to inconsistencies found between Plaintiff's complaints and the medical record, the ALJ found that Plaintiff's statements about his symptoms were only partially supported by the objective medical evidence. AR 34. "Further, the objective medical evidence is inconsistent with the alleged severity of the functional limitations imposed by the claimant's impairments and suggests the claimant's symptoms and limitations were not as severe" as Plaintiff has alleged. AR 34. The ALJ then proceeded to summarize the objective evidence.

With respect to Plaintiff's uncontrolled diabetes, the ALJ noted several normal examination results in 2015 and again in 2018. AR 34. Similarly, with regard to Plaintiff's arthropathy of the cervical spine, the ALJ noted normal range of motion findings with muscle tenderness and pain but no spasms. AR 35. Regarding Plaintiff's degenerative disc disease of the lumbar spine, the ALJ cited a normal examination result in 2014, unassisted ambulation in 2016, and a negative bilateral straight-leg-raising test result. AR 35.

The ALJ discussed Plaintiff's "history of metastatic neoplastic disease with testicular cancer metastatic to lymph nodes," but observed that a CT scan in 2014 showed no evidence of metastatic disease. AR 35.

Physical examination results of Plaintiff's hands in 2015 documented worsening pain and tenderness in and swelling in Plaintiff right hand and fingers, but normal range of motion findings and a negative result for digital compression test of

carpal tunnel. AR 35. A 2016 x-ray of the right hand showed no abnormalities but reduced range of motion. AR 35. Plaintiff's left hand showed normal findings in 2018. AR 35. The ALJ noted that an internal medicine consultative examiner opined that Plaintiff's history of neuropathy as well as osteoarthritis, carpal tunnel syndrome, and trigger finger of the right hand would limit Plaintiff's activities. AR 36.

Considering the above-documented medical history, in combination with Plaintiff's obesity, the ALJ arrived at Plaintiff's RFC, finding the assessment to be "the most that [Plaintiff] could do on a regular and continuing basis despite [his] impairment-related limitations." AR 37.

The Court's review of the record shows that the ALJ thoroughly considered Plaintiff's medical records and found that they did not support Plaintiff's allegations of disabling symptoms and limitations. *See Reddick*, 157 F.3d at 725. The ALJ was permitted to rely on the normal examination results and lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations).

In sum, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.[3]

---

[3] Plaintiff also challenges whether the ALJ properly considered his mother's statements, but does not cite to the administrative record or any legal authority to support this challenge. *See* JS 15. "Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010). In any event, because Plaintiff's mother's testimony mirrored Plaintiff's own testimony and did not describe any limitations beyond those described by Plaintiff, any error is harmless. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination."); *see also Molina v. Astrue*, 674 F.3d

**B. The ALJ Properly Considered the Relevant Medical Evidence in Assessing Plaintiff's RFC**

Plaintiff contends that the ALJ failed to properly consider significant and relevant medical evidence in assessing Plaintiff's RFC. *See* JS 5-9. In particular, Plaintiff contends that the ALJ failed to address in any meaningful way the effect of Plaintiff's volatile blood sugar levels and the fact that Plaintiff is very insulin resistant. JS 6. Plaintiff also contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physician, Dr. Basch, expressed on October 19, 2017, and consultative examiner Dr. Sial. JS 6-9. The Commissioner contends that the ALJ properly considered all of the evidence. *See* JS 9-12.

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *50). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff argues that the ALJ failed to give proper weight to Dr. Basch's October 19, 2017 opinion, wherein Dr. Basch referred to Plaintiff's hypoglycemic episodes, fatigue, and pain as the bases for the need for an in-home care attendant. JS 6 (citing AR 1629). Plaintiff contends that, while Dr. Basch did not offer any specific work function restrictions, he corroborated the fact that Plaintiff suffers from

---

1104, 1121-22 (9th Cir. 2012) (an ALJ's error is harmless if the statements made by the lay witness do not describe any limitations beyond those described by the claimant).

11

hypoglycemic episodes, fatigue, and pain, all of which affect Plaintiff's daily living activities and normal functioning. JS 7.

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted).

In assigning little weight to Dr. Basch's opinion, the ALJ found that the opinion was not supported by the relevant objective medical evidence, was inconsistent with medical evidence from other medical and nonmedical sources, and was contradicted by other factors. AR 37. As Plaintiff acknowledges, the ALJ gave little weight to Dr. Basch's opinion because the opinion did not opine on what Plaintiff could still do despite his impairments. *Id*. Additionally, the ALJ gave little weight to Dr. Basch's opinion because it "primarily summarized [Plaintiff's] subjective complaints, diagnoses, and treatment without documenting any significant positive objective findings that would support this opinion." *Id*. The ALJ also concluded that the opinion was not supported by the objective medical evidence or other medical evidence. *Id*. And finally, the ALJ found that Dr. Basch's opinion was inconsistent with medical evidence from other medical sources, and noted specifically that Dr. Sial, a consultative examiner, found Plaintiff could still perform work at the light exertional level with certain accommodations. *Id*. The Court concludes that the ALJ set out a detailed and thorough summary of the facts and conflicting evidence in discussing Dr. Basch's opinion, and provided ample specific

and legitimate reasons supported by substantial evidence in assigning little weight to Dr. Basch's opinion. *See Garrison*, 759 F.3d at 1012.

Next, Plaintiff contends that the ALJ failed to properly address consultative examiner Dr. Sial's limitations regarding Plaintiff's ability to sit/stand/walk and the use of his upper extremities. JS 7-9. With respect to Dr. Sial's standing and walking limitations, as Plaintiff references, the ALJ did adopt some of Dr. Sial's limitations and even assessed a more restrictive exertional level given the limitations imposed by Plaintiff's obesity. AR 36. And with respect to the ALJ's assessment concerning Plaintiff's upper extremities, the Court finds this assessment is supported by substantial evidence. The ALJ's decision summarized the medical evidence documenting normal range of motion findings and a negative result for digital compression test of carpal tunnel in Plaintiff's right hand in 2015, and a 2016 right hand x-ray showing no abnormalities but reduced range of motion. AR 35. The combination of normal exam results related to Plaintiff's right hand and the adoption of Dr. Sial's assessed limitations regarding standing and walking demonstrates that the ALJ carefully considered and weighed Dr. Sial's opinion.

Lastly, Plaintiff contends in a conclusory manner that the ALJ's failure to address his hypoglycemic episodes constitutes reversible error. JS 7. Plaintiff provides no argument supported by citations to case law or statutory authorities in support of this contention. The Court reviews "only issues which are argued specifically and distinctly." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994); *see also Graf*, 610 F.3d at 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived"); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018) ("The Court's role is not to make or develop arguments on behalf of the parties, and . . . failure to present cogent arguments is enough to deny these objections"). Even if the Court were to consider this argument, it finds that the ALJ's decision did discuss Plaintiff's uncontrolled diabetes mellitus with kidney

complications, *see* AR 34-35, and, based on this severe impairment and others, the ALJ assessed a restricted sedentary work RFC. *See* AR 34-35.

Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 31, 2019            /s/
                                    ROZELLA A. OLIVER
                                    UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**